O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN TRUJILLO, et al.<br>Plaintiffs,<br>v.<br>CITY OF ONTARIO, et al.<br>Defendants. | Case No. EDCV 04-1015-VAP(SGLx)<br>**[Motion filed on August 3, 2009]**<br>**ORDER GRANTING FINAL APPROVAL OF SETTLEMENT** |

Plaintiffs' Motion for Final Approval of the Settlement ("Mot.") was filed August 3, 2009. The Settlement includes the "Joint Stipulation of Class Action Settlement and Release" and exhibits attached thereto, all filed on April 15, 2009. ("Settlement Agreement.") The Settlement also includes modifications of the Settlement Agreement by: (1) the Court's May 14, 2009 Order Re Joint Stipulation of Class Action Settlement and Release; (2) the Court's May 18, 2009 Minute Order granting preliminary approval of the Settlement Agreement ("May 18, 2009 Minute Order"); (3) the Court's orders in response to the parties' ex parte

application of June 8, 2009 (re no publication of class notice) as well as the parties' stipulations of July 2, 2009 (service of revised claim forms), July 22, 2009 (no incentive payments for Salvador Garcia ("Garcia") or Jim Renstrom ("Renstrom")), and August 10, 2009 (distribution of checks by Class Counsel, incentive payments not claimed by Garcia and Renstrom distributed via cy pres).

Defendants Michael Thompson, City of Ontario, Ontario Police Department, Lloyd Scharf, Tony Del Rio, and Brad Schneider ("Defendants") filed a Statement in Support of Settlement on August 4, 2009.  On August 13, 2009, the City of Ontario Risk Manager, Ann Richey, filed a declaration regarding Defendants' compliance with the Settlement.

On August 17, 2009, the parties lodged a Revised Proposed Order Granting Final Approval of Class Action Settlement and Judgment ("Revised Proposed Order") but the Settlement does not require its use.  (See Settlement Agreement ¶ 26(c).)

**I. BACKGROUND**

**A. Procedural History**

The Law firm of Lackie & Dammeier filed the original Complaint in August 2004 on behalf of Robert Bernhard ("Bernhard"), Scott Anderson ("Anderson"), Steven Hurst

2

1  ("Hurst"), Renstrom, Ron Dupuis ("Dupuis"), Keith
2  Henderson ("Henderson"), Craig Pefferle ("Pefferle"),
3  Nicko Carcich ("Carcich"), Rick Carroll ("Carroll"),
4  Garcia, Christopher Alvarez ("Alvarez"), Fred Ruiz
5  ("Ruiz"), Steve Guderian ("Guderian"), Mike Kelley
6  ("Kelley"), and Mike Bors ("Bors") as individuals.

8      In October of 2004, Lackie & Dammeier, with the
9  American Civil Liberties Union ("ACLU") and Bahan &
10 Associates, filed a First Amended Complaint ("FAC") on
11 behalf of Steven Trujillo ("Trujillo"), Jeff Quon
12 ("Quon"), Craig Ansman ("Ansman"), Will Rivera
13 ("Rivera"), Anderson, Bernhard, and Pefferle
14 (collectively "Plaintiffs"), as representatives of a
15 purported class.  Trujillo, Ansman, Rivera, Anderson,
16 Bernhard, and Pefferle served as Class Representatives.
17 (Settlement Agreement ¶ 1.)

19     The Court granted Plaintiffs' motion for class
20 certification pursuant to Fed. R. Civ. P. 23(b)(3) in
21 April 2005, designating Della Bahan ("Bahan"), Peter
22 Eliasberg ("Eliasberg"), and Michael Lackie ("Lackie") as
23 co-lead counsel of a class consisting of "[a]ll persons
24 who were employed by the Ontario Police Department or
25 volunteered for the Ontario Police Department, used the
26 Department's men's locker room during the period in which
27 the surveillance equipment was installed, and were

3

1  recorded by the surveillance equipment."  (Order Granting
2  Mot. for Class Certification 2, 16.)

4      The Court granted Defendants' motion to disqualify
5  Lackie & Dammeier as counsel in August 2005 and in May
6  2009 denied that firm attorney's fees.  (August 17, 2005
7  Minute Order Granting Defs.' Mot. to Disqualify Counsel;
8  May 13, 2009 Minute Order Den. Lackie & Dammeier's Mot.
9  for Att'y Fees.)

11     In April, 2006, the Court heard cross-motions for
12 summary judgment and granted summary adjudication in
13 favor of Plaintiffs.  (Amended Order Den. In Part and
14 Granting In Part Pls.' and Defs.' Mots. for Summ. J. 1.)
15 Defendants appealed the Court's denial of qualified
16 immunity and the Ninth Circuit affirmed.

18     In the summer of 2008, the Court permitted Bahan &
19 Associates to withdraw as counsel and appointed Hadsell
20 Stormer Keeny Richardson & Renick ("Hadsell Stormer") as
21 co-class counsel.  (July 23, 2008 Order Granting Mot. for
22 Substitution of Class Counsel 2.)  Since then, Hadsell
23 Stormer and Eliasberg of the ACLU have served as Class
24 Counsel.  (Id. at 6.)

26     The parties prepared for trial during the latter part
27 of 2008 and into February, 2009.  On the morning of the

first day of trial, they announced they had reached a settlement of their dispute.

In May 2009 the Court gave preliminary approval to the Settlement. The Court found the proposed notice and claim form met the requirements of Rule 23 and due process and were the best notice practicable. (Order Re Joint Stipulation of Class Action Settlement and Release ¶ 5.)

Accordingly, notice was sent to class members. (Id.; May 18, 2009 Minute Order.) Class Counsel received the claim forms. With defense counsel, they sought and obtained several adjustments to the claim forms and procedures which now form part of the Settlement, as described above.

**B.   Settlement Terms**

The Settlement creates two non-reversionary funds totaling $2.75 million: a $1.54 million fund for payments to class members and a $1.21 million fund for attorneys' fees and costs. (Settlement Agreement ¶¶ 6, 10.) Class Counsel will distribute funds as follows: (1) $10,000 to each class member who submitted a claim form timely; (2) an additional $10,000 (for $20,000 total) to ten of the

twelve persons[1] who were named as plaintiffs in the original Complaint but not the FAC; (3) an additional $30,000 (for $40,000 total) to the six Class Representatives. (Mot. 11.)

Garcia and Renstrom could have been eligible, as persons named as plaintiffs in the original Complaint but not the FAC, for $10,000 incentive payments. The $20,000 unclaimed by Garcia and Renstrom, as well as any portion of the $2.54 million remaining after the distribution of the monies provided for in the Settlement, will be distributed to the United States Adaptive Recreation Center ("USARC"). (Order Granting Stipulation for Settlement Check Distribution to Class Members and Allocation of Funds Set Aside for Enhancement Awards Not Sought by Original Pls.; Settlement Agreement ¶ 38.)

Pursuant to the Settlement, the claim forms were to be mailed no later than Monday, June 8, 2009, objections filed no later than July 8, 2009, and claim forms postmarked no later than August 7, 2009. (May 18, 2009 Minute Order at 2.) The parties complied with these provisions. (Richey Decl. ¶¶ 2-3; Lebano Decl. ¶¶ 2-7.)

---

[1] Hurst, Dupuis, Henderson, Carcich, Carroll, Alvarez, Ruiz, Guderian, Kelley, and Bors.

6

1   Defendants at paragraph 25 of the Settlement
2  Agreement agreed to provide notice to state officials as
3  provided by the Class Action Fairness Act ("CAFA"), 28
4  U.S.C. section 1715(b), although such notice was not
5  required by law because this action was filed before CAFA
6  became effective.  28 U.S.C. § 1332; Class Action
7  Fairness Act, Pub. L. 109-2 § 9 (2005).  At the hearing
8  on this matter Defendants confirmed they complied with 28
9  U.S.C. section 1715(b).

11   Pursuant to an order filed in response to the
12 parties' July 2, 2009 stipulation, the Court permitted
13 class members who received claim forms with errors to
14 submit their claim forms no later than August 18, 2009 or
15 August 21, 2009, depending on the reason a revised claim
16 for was needed.  Nevertheless, Class Counsel received
17 claim forms timely from all 121 class members.

### II. LEGAL STANDARD

20   Rule 23(e) of the Federal Rules of Civil Procedure
21 provides that the "claims, issues, or defenses of a
22 certified class may be settled, voluntarily dismissed, or
23 compromised only with the court's approval."  Rule
24 23(e)(2) further states: "If the proposal would bind
25 class members, the court may approve it only after a
26 hearing and on finding that it is fair, reasonable, and
27 adequate."

To determine whether the settlement is adequate and reasonable, the Court balances several factors, which may include:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th Cir. 1992).

### III. DISCUSSION

For the reasons below, the Court finds the Settlement is fair, adequate, reasonable, in the best interests of the class as a whole, and satisfies Rule 23 of the Federal Rules of Civil Procedure and due process requirements. See id.

**A. Fairness, Adequacy, and Reasonableness of Settlement**
   **1. Arms-length negotiations**

The parties engaged in extensive negotiations, including at least three mediation sessions presided over by currently-serving or retired judicial officers. The Court is satisfied the Settlement is the product of arms-length negotiation. (Mot. 8-9; Declaration of Peter Eliasberg ("Eliasberg Decl.") ¶¶ 3-4.)

> **2. The strength of Plaintiffs' case, including the risk, expense, complexity and likely duration of further litigation and the amount offered in settlement**

Plaintiffs obtained summary adjudication in their favor regarding the liability of certain Defendants to the class. The trial would have been devoted largely to assessing damages and the liability of Defendants who supervised persons already found liable, indicating a strong likelihood Plaintiffs would recover.

Nevertheless, class members sought only emotional distress damages and no class member could produce proof of visits to mental health professionals or other documentary evidence of special damages. (Mot. 10; Pls.' Mot. for Preliminary Approval of Class Action Settlement 4, 7.) Thus, damages in this case were somewhat uncertain, making the range of reasonable recovery above zero but difficult to define.

The Settlement is within the range of awards in other cases involving video surveillance. (Mot. 8-10.) Accordingly, Plaintiffs have satisfied this requirement.

**3. The extent of discovery completed, and the stage of the proceedings**

The parties completed sufficient discovery to permit an informed settlement – indeed, discovery was complete at the time settlement was achieved.  The parties briefed and argued cross motions for summary adjudication, pursued appellate litigation, and arrived in Court prepared to try their case to a jury.

**4. The reaction of the class members to the proposed settlement**

The reaction of the class has been very favorable. All 121 class members submitted claim forms timely. (Lebano Decl. ¶¶ 2-4; Mot. 11; Revised Proposed Order ¶ 4; Declaration of Ann Richey, City of Ontario Risk Manager, Re: Compliance with Preliminary Order and Settlement Agreement ("Richey Decl.") ¶ 5.)  Accordingly, the rate of class members submitting claim forms exceeds 99%.

No objections appear on the Court's docket.  One class member, Darryl Bolke ("Bolke"), sent a communication objecting to the Settlement to the ACLU only, a copy of which the ACLU furnished to the Court. (Lebano Decl. ¶ 8 (Lebano received communication from Bolke attached to Bolke's claim form), Ex. 1 (copy of Bolke submission).)  One other person may have sent a

similar communication to Class Counsel and defense counsel but the Court has not received a copy of this submission. (Revised Proposed Order ¶ 2 (reporting "one" document "sent by another Class Member both to Defendants' Counsel and Class Counsel").)

The Court cannot conclude these communications comply with the conditions for objections enumerated in the Settlement as they were not provided to all parties' counsel and served on the Court. (Settlement Agreement Ex. C at 6; May 18, 2009 Minute Order at 2.) Even assuming, without deciding, that these statements could properly be considered objections, the communication of which the Court has a copy, from Bolke, does not change the result reached by the Court.

Bolke disagrees with the class' receipt of money rather than other relief. (Lebano Decl. Ex. 1.) This is an objection which would apply to many settlements and does not, by itself, show the terms of this settlement to be unfair or inadequate.

Accordingly, the overall reaction of the class to the settlement has been positive and shows strong support for granting final approval.

### 5. Whether disparate treatment of class members is justified and the propriety of incentive awards to class representatives and former plaintiffs

The criteria the Court may consider in determining whether to make an incentive award include:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

After reviewing the evidence before it, including that submitted in support of preliminary approval, the Court concludes: (1) the $10,000 incentive payments to ten of the persons named in the original Complaint (Kelley, Hurst, Dupuis, Henderson, Carcich, Carroll, Alvarez, Ruiz, Guderian, Bors) are reasonable; (2) the $30,000 incentive payments to the Class Representatives are reasonable.

The $10,000 incentive payments to the aforementioned ten persons named in the original Complaint are supported by the evidence before the Court of the contributions these persons made to the prosecution of the litigation

12

or the risk of retaliation they experienced, which were not shared by the class as a whole. (See Declaration of Peter Eliasberg in Support of Pls.' Mot. for Preliminary Approval of Class Action Settlement ("3/17/09 Eliasberg Decl.") ¶ 24; Declaration of Craig Pefferle in Support of Pls.' Mot. for Preliminary Approval of Class Settlement ("3/16/09 Pefferle Decl.") ¶ 11; Declaration of Craig Ansman in Support of Pls.' Mot. for Preliminary Approval of Class Settlement ("3/16/09 Ansman Decl.") ¶ 13.)

The $30,000 incentive payments to the six Class Representatives are also justified by the substantial time these persons contributed to the litigation, the significant contributions they made, which benefitted the class as a whole, and the personal risk, notoriety, and difficulties they experienced in serving as Class Representatives. (Mot. 12-13; Declaration of Robert Bernhard in Support of Pls.' Mot. for Preliminary Approval of the Class Settlement ("3/16/09 Bernhard Decl.") ¶¶ 3-11, 15; 3/16/09 Pefferle Decl. ¶¶ 3-12; Declaration of Will Rivera in Support of Pls.' Mot. for Preliminary Approval of Class Settlement ("3/16/09 Rivera Decl.") ¶¶ 3-12; 3/13/09 Anderson Decl. ¶¶ 3-17; 3/16/09 Ansman Decl. ¶¶ 3-10.)

Bolke, the class member who wrote to the ACLU, does not agree with the disparity between the work performed

13

by some class members, particularly some of those named in the original Complaint who did not act as Class Representatives, and the monies they will receive.  He does not name who should receive less money or why but suggests Trujillo should decide who will receive incentive awards.  (Lebano Decl. Ex. 1 at 3.)

Bolke is the only person of 121 class members to raise this point and does not give particularized facts to call into question the detailed evidence Plaintiffs submitted to support the incentive awards.  (See Mot. 12-13.)  Accordingly, the Court finds the disparate treatment of class members pursuant to the Settlement is justified.

### 6. Whether the class was fairly and accurately represented during negotiations

Plaintiffs' counsel included attorneys specializing in civil rights issues and in trial litigation.  Class Representatives participated in three mediations as well as the negotiations which immediately preceded settlement.  (Mot. 8; 3/16/09 Eliasberg Decl. ¶¶ 22-23; see, e.g., 3/16/09 Bernhard Decl. ¶ 4; 3/16/09 Pefferle Decl. ¶ 3; 3/16/09 Rivera Decl. ¶ 4.)  The Court concludes the class was fairly and accurately represented during negotiations.

**7. The experience and views of class counsel**

Plaintiffs' counsel included attorneys from among the nation's foremost civil rights organizations and prominent trial attorneys; class members participated in mediations and settlement negotiations. (See 3/16/09 Eliasberg Decl. ¶ 24; see, e.g., 3/16/09 Bernhard Decl. ¶¶ 3-4; 3/16/09 Rivera Decl. ¶ 4.) Class Counsel support the settlement. The Court concludes counsel is competent, experienced, and not subject to influence by the opposing party.

**8. Scope of claims released**

The factors listed in Seattle are not exclusive. See 955 F.2d at 1291. Here the parties revised the language in the Settlement Agreement pursuant to the Court's concern that the language releasing claims was too broad. The Court finds the language in the Settlement reasonable, fair, and adequate.

**B. Adequacy of Notice to the Class**

When granting preliminary approval, the Court found the proposed notice and claim form met the requirements of Fed. R. Civ. P. 23 and due process and were the best notice practicable. (Order Re Joint Stipulation of Class Action Settlement and Release ¶ 5.) After approving four modifications to the notice and administration

1  procedures, sought on an ex parte basis or pursuant to
2  stipulations, the Court confirms this finding.
3  Plaintiffs submit evidence they contacted each class
4  member and that at least 120 of 121, or over 99% of the
5  class, submitted claim forms.  (Lebano Decl. ¶¶ 2-4.)

## IV.  CONCLUSION

For the above reasons, the Court GRANTS the Motion, gives final approval to the Settlement, and DISMISSES the action WITH PREJUDICE.  All class members (not including those who opted out timely after the Court's April 14, 2005 class certification order) shall be bound by this Order.

The Court has given final approval to the settlement. Accordingly the Court GRANTS the motion for attorney's fees as provided in the Court's June 11, 2009 Order, which conditionally granted attorney's fees.

The Court reserves and maintains jurisdiction over this settlement and its provisions, and the distribution of the funds.

Dated: August 24, 2009

VIRGINIA A. PHILLIPS
United States District Judge